IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| COOPER MATERIALS HANDLING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14cv956 (JCC/TRJ) |
| | ) | |
| GORDON TEGELER, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Gordon

Tegeler's ("Defendant" or "Tegeler") Motion to Dismiss for Lack

of Jurisdiction, [Dkt. 7], and corresponding Memorandum in

Support, [Dkt. 8].  Plaintiff Cooper Materials Handling, Inc.

("Plaintiff" or "Cooper Materials") has brought this action

alleging breach of contract, breach of fiduciary duties, and

conversion arising from Tegeler's previous employment with

Cooper Materials.  (*See* Compl. [Dkt. 1] ¶¶ 19, 25, 31.)  For the

reasons set forth below, the Court will deny Defendant's motion.

**I. Background**

Cooper Materials is a small business specializing in

project management, design/build and materials handling

equipment.  (Compl. ¶ 1.)  It is incorporated under the laws of

1

Virginia with its headquarters in Vienna, Virginia.  (*Id.* ¶ 1.)
Tegeler is a Maryland citizen.  (*Id.* ¶ 4.)

From January 21, 2012 until July 11, 2014, Tegeler
worked at Cooper Materials as Director of Preconstruction.  (*Id.*
¶ 3.)  The complaint does not detail where Tegeler was based
during his time at Cooper Materials.  According to Tegeler, he
worked in Frederick, Maryland.  (Def.'s Mot. to Dismiss Mem.
[Dkt. 8], Tegeler Decl. at 2 [hereinafter Tegeler Decl.].)  A
few weeks after starting on the job, Tegeler signed a
confidentiality agreement.  (Compl. ¶ 4.)  In his role, Tegeler
had access to Cooper Materials's confidential and proprietary
information.  (*Id.* ¶ 4.)

One of Tegeler's job responsibilities was coordinating
efforts between Cooper Materials and Montage, Inc. ("Montage")
on joint bids for projects for the U.S. State Department and the
Federal Bureau of Investigation.  Tegeler was Cooper Materials's
representative on a joint bid for a State Department project in
Abu Dhabi.  (*Id.* ¶ 5.)  He traveled to Abu Dhabi as part of the
bidding process.  (*Id.* ¶ 5.)  Upon his return, Tegeler informed
Cooper Materials that Montage was not awarded the project.  (*Id.*
¶ 6.)  According to Cooper Materials, unbeknownst to it at the
time Montage was, in fact, awarded the project.  (*Id.* ¶ 6.)

Shortly after returning from the Abu Dhabi trip,
Tegeler submitted his resignation to Cooper Materials,

2

"indicating that he did not feel that he was being successful in his role at Cooper and that although he did not have another job lined-up, he felt that it was best that he end his employment with Cooper." (*Id.* ¶ 7.)  He tendered his resignation on July 7, 2014, stating his last day was July 11, 2014. (*Id.* ¶ 7.)

Cooper Materials alleges that while Tegeler was still in its employ, Tegeler diverted business opportunities from Cooper Materials to Montage, including the Abu Dhabi project. (*Id.* ¶ 12.)  At some point between July 7 and July 11, Cooper Materials alleges that Tegeler made copies of its confidential and proprietary information, including bids and bid-related documents. (*Id.* ¶ 11.)  The complaint does not detail where this copying occurred, but many of Cooper's confidential records are held on the company's computer server located and administered in Virginia. (Pl.'s Opp. [Dkt. 10] at 3.)  Tegeler maintains that if any copying occurred, it took place in Maryland, not Virginia. (Def.'s Mot. to Dismiss Mem. at 4.)

Cooper Materials filed this suit on July 25, 2014 alleging three causes of action: (1) breach of contract under the confidentiality agreement for the misappropriation of confidential company information; (2) breach of the fiduciary duties of good faith and loyalty; and (3) conversion of the confidential information.  Tegeler filed the instant motion, arguing that the complaint should be dismissed because this

Court lacked personal jurisdiction over him.  (Def.'s Mot. to Dismiss Mem. at 1.)

Having been fully briefed and argued, Tegeler's is ripe for adjudication.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to raise lack of personal jurisdiction as a defense in a pre-answer motion.  The plaintiff bears the burden of proving to the court the existence of jurisdiction over the defendant by a preponderance of the evidence.  *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (citation omitted).  If there are disputed factual questions as to the existence of jurisdiction, the court may hold a separate evidentiary hearing or may defer ruling pending relevant evidence produced at trial.  *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Long v. Chevron Corp.*, No. 4:11cv47, 2011 WL 3903066, at *3 (E.D. Va. Sept. 2, 2011).  In the absence of an evidentiary hearing, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis.  *New Wellington*, 416 F. 3d at 294.  In determining whether a plaintiff has met this burden, courts "'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable

4

inferences for the existence of jurisdiction.'" *Id.* (quoting *Combs*, 886 F.2d at 676).

### III. Analysis

Federal courts exercise personal jurisdiction in the manner provided by state law. *New Wellington*, 416 F.3d at 294. Determining whether personal jurisdiction exists involves two steps: (1) whether the state's long-arm statue authorizes the exercise of jurisdiction and, if so (2) whether the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *Eagle Paper Int'l, Inc. v. Expolink, Ltd.* No. CIV.A. 2:07CV160, 2008 WL 170506, at *3 (E.D. Va. Jan. 17, 2008). In Virginia, "[i]t is manifest that the purpose of Virginia's long-arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause." *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 512 S.E.2d 560, 562 (Va. 1999). Because Virginia's long-arm statute is intended to extend personal jurisdiction to the outer limits of due process, the constitutional and statutory inquiry merge. *Id.; see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

There are two types of personal jurisdiction that meet the requirements of due process: specific and general jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

473-74 (1985).  In both instances, a non-resident defendant must have sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

**A. Specific Jurisdiction**

To adequately allege specific jurisdiction, the plaintiff must show that a defendant "purposefully directed his activities at the residents of the forum and the litigation results from alleged injuries that arise out of those activities." *Burger King*, 471 U.S. at 472 (citations omitted) (internal quotation marks omitted).  This test protects a defendant from having to defend himself in a forum where he could not have anticipated being sued. *Consulting Engineers*, 561 F.3d at 276.  It prevents "jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (citations omitted) (internal quotation marks omitted).

In analyzing the due process requirements for asserting specific jurisdiction, the Fourth Circuit has set out a three-part test in which the Court must consider, in order, (1) "the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State;" (2) "whether the plaintiffs' claims arise out of those

6

activities directed at the State;" and (3) "whether the exercise
of personal jurisdiction would be constitutionally reasonable."
*Consulting Engineers*, 561 F.3d at 279 (citing *ALS Scan, Inc. v.
Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir.
2002)).  Each factor will be considered in turn.

### 1. Purposeful Availment

"The first prong articulates the minimum contacts
requirement of constitutional due process that the defendant
purposefully avail himself of the privilege of conducting
business under the laws of the forum state." *Consulting
Engineers*, 561 F. 3d at 278.  In evaluating this requirement,
courts have considered various nonexclusive factors, including:

> whether the defendant maintains offices or
> agents in the forum state; whether defendant
> owns property in the forum state; whether
> the defendant reached into the forum state
> to solicit or initiate business; whether the
> defendant deliberately engaged in
> significant or long-term business activities
> in the forum state; whether the parties
> contractually agreed that the law of the
> forum state would govern disputes; whether
> the defendant made in-person contact with
> the resident of the forum in the forum state
> regarding the business relationship; the
> nature, quality, and extent of the parties'
> communications about the business being
> transacted; and whether the performance of
> contractual duties was to occur within the
> forum.

*Consulting Engineers*, 561 F. 3d at 278 (citations omitted).

Here, Tegeler was employed by a Virginia corporation.  He could

7

have turned down Plaintiff's job offer and worked somewhere else, but instead he made a conscious choice to work for Plaintiff. *Cf. National Corp. Housing, Inc. v. Ayres*, No. 1:11-cv-1391 (AJT-TCB), 2012 WL 1081170, at *6 (E.D. Va. Mar. 28, 2012) (stating there was no evidence in the record that defendants negotiated or signed any employment contracts with Virginia company that acquired defendant's previous employer). He traveled to Vienna, Virginia for the job interview. (Pl.'s Opp. at 3.) As part of his job duties, he regularly communicated with colleagues in Virginia and made several visits to company headquarters in Virginia. (*Id.*) Among projects in other locations, Tegeler managed construction projects in Virginia. (*Id.*) Tegeler worked for Plaintiff for two years and had substantial responsibility for the company. On these facts, Tegeler can be said to have "purposefully availed" himself of conducting business in Virginia.

## 2. "Arising From"

This prong requires the defendant's contacts with the forum state to form the basis for the suit. *See Burger King*, 471 U.S. at 472. As relevant here, Virginia's long-arm statute permits Virginia courts to exercise personal jurisdiction over an individual where the cause of action "arises from" the person's:

> (1) transacting any business in this Commonwealth;
>
> (2) contracting to supply services or things in this Commonwealth;
>
> (3) causing tortious injury by an act or omission in this Commonwealth;
>
> (4) causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth[.]

VA. CODE. ANN. § 8.01-328.1(A)(1)-(4). Though Plaintiff's Opposition states all four of these circumstances apply here, its brief is focused on § 8.01-328.1(A)(1), transacting any business in the Commonwealth. (Pl.'s Opp. at 3.)

Virginia is a single act state, requiring only one transaction in Virginia to confer jurisdiction on its courts. *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 180 S.E.2d 664, 667 (Va. 1971). "A single act of business can confer jurisdiction provided that it is significant and demonstrates purposeful activity in Virginia." *Prod. Grp. Int'l v. Goldman*, 337 F. Supp. 2d 788, 793 (E.D. Va. 2004); *see also English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990); *Dollar Tree Stores, Inc. v. Mountain Pacific Realty, LLC*, Civil No. 12-1130, 2013 WL 8216346, at *2 (Va. Cir. Ct. Jan. 29, 2013). When a contract between the parties gives rise to a defendant's business in

Virginia, courts look at: "(i) where any contracting occurred, and where the negotiations took place; (ii) who initiated the contact; (iii) the extent of the communications, both telephonic and written, between the parties; and (iv) where the obligations of the parties to the contract were to be performed." *Dollar Tree Stores*, 2013 WL 8216346, at *2.

In this case, the parties' relationship arises from a contract.  Tegeler was physically present in Plaintiff's headquarters in Vienna, Virginia when he was hired and was physically present in the same Virginia office when he signed the confidentiality agreement at issue in this litigation.[1] (Pl.'s Opp. at 3.)  It is unclear whether or where any negotiations to the contract took place, but it may be presumed that any negotiations on Plaintiff's end were conducted at the Vienna headquarters and Tegeler was aware of that fact.  It is similarly unclear who initiated contact between the two parties (i.e. whether Tegeler was recruited to the company or whether he responded to a job posting).  However, this prong seeks to ascertain whether a defendant "reached into" Virginia, and initiating contact is one way to do so.  *See Dollar Tree,* 2013 WL 8216346, at *3.  Based on the parties' statements, it appears Tegeler "reached into" Virginia for this job, even though his

---

[1] There is no separate written employment contract that governs the relationship between Tegeler and Plaintiff.

office was in Maryland. *Compare Ayres*, 2012 WL 1081170, at \*6 (failing to find personal jurisdiction in Virginia where an Ohio company originally employing defendants was sold to a Virginia company and defendants continued to work for the new company without any formal employment agreements) *with Production Group*, 337 F. Supp. 2d at 792 (stating one factor contributing to the exercise of personal jurisdiction was a Florida defendant's acceptance of employment with a Virginia company during meetings in Florida) *and I.T. Sales, Inc. v. Dry*, 278 S.E.2d 789, 789-90 (Va. 1981) (finding personal jurisdiction in Virginia where an employee, then a Virginia resident, entered into an employment contract that required him to move to California to conduct sales for a Virginia company).

With respect to the extent of communications between the parties, Tegeler regularly communicated with Plaintiff's Virginia employees. (Pl.'s Opp. at 5.) Tegeler avers that he traveled to Virginia "only occasionally" to visit construction sites. (Tegeler Decl. ¶ 4.) His "best estimate" of the number of trips he made to Virginia "in connection with my employment" was "no more often than once per month." (*Id.* ¶ 4.) At most, this means Tegeler made twenty-four employment-related trips to Virginia. Though it is difficult for this Court to conclusively establish how many times Tegeler came to Virginia for work, it is enough at this stage to know that there was more than one

11

occasion in which he traveled to the Commonwealth for business. *See Production Group*, 337 F. Supp. 2d at 796 (finding personal jurisdiction in light of defendant's acceptance of employment with a Virginia company, his regular communications with Virginia colleagues in the course of performing his job duties, and his three trips to plaintiff's Virginia headquarters in performance of his employment contract).

Finally, Tegeler was contractually obligated not to disclose confidential and proprietary information. (Compl. ¶ 4.) Such information includes cost information, bid strategies, and internal cost structures, much of which is maintained in records held on Cooper's computer server located and administered in Virginia. (Pl.'s Opp. at 3.) Thus, much of the subject matter of the contract is located in Virginia.

Without citing any case law in support of his position, Tegeler argues in his brief that Plaintiff's allegations – the copying of files and the aiding of a competitor firm – do not arise out of his contacts with Virginia. (Def.'s Mot. to Dismiss Mem. at 4.) At oral argument, Tegeler's counsel maintained that the trips to Virginia cannot fairly be construed as fulfilling obligations under the confidentiality agreement. According to counsel, Tegeler's purpose in traveling to Virginia was not to "keep secrets." Rather, Tegeler traveled to Virginia in order to

perform his job duties, not to refrain from divulging
confidential information. These arguments are unpersuasive.
Plaintiff's allegations are based on the confidentiality
agreement that Tegeler signed in Virginia with a Virginia
company.  Any alleged actions taken by Tegeler flow from that
agreement, and thus any copying and aiding competitors all arise
from a promise he made in Virginia to keep Plaintiff's business
information confidential.  While Tegeler maintains that the
preparation of the Abu Dhabi bid did not take place in Virginia
(Tegeler Decl. ¶ 5.), Plaintiff alleges wrongdoing arising from
"other potential projects." (Compl. ¶ 12.)  These other
projects could arise out of his contacts with Virginia, as
Tegeler was responsible for construction projects in the
District of Columbia, Virginia, and West Virginia. (Pl.'s Opp.,
Downs Decl. ¶ 17.)  Additionally, in traveling to Virginia to
perform his job duties, Tegeler was necessarily fulfilling the
promise he made when he signed the confidentiality agreement.
Keeping certain information confidential was part of his job,
and he has conceded that he was in Virginia several times over
the course of two years to do his job.  Therefore, his trips to
Virginia did, in fact, involve his obligations under the
confidentiality agreement.

Even if the acts giving rise to the breach do not
"arise from" his specific contacts with Virginia, it is

13

appropriate to consider the scope of *any* contract-related activities in determining whether personal jurisdiction exists. *See Production Group*, 337 F. Supp. 2d at 794.  In *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, the Supreme Court of Virginia considered whether a Virginia court could exercise personal jurisdiction over a Florida defendant.  512 S.E.2d 560, 563 (Va. 1999).  The defendant sold plaintiff, a Virginia corporation, a boat.  *Id.* at 561-62.  The transaction occurred in Florida.  *Id.*  The parties agreed that the defendant would ship the boat from Florida to South Carolina, whereupon the plaintiff's employees would accept delivery.  *Id.*  En route to South Carolina, the boat developed an oil leak and sustained damage to the propeller.  *Id.* at 562.  For additional consideration, the defendant delivered the boat all the way to Virginia instead.  *Id.* at 562.  The defendant's employees physically transported the boat within Virginia and delivered the boat to the plaintiff in Virginia.  *Id.* at 563.  There were several telephone conversations regarding repairs, and the defendant told the plaintiff over the phone that the plaintiff should have the necessary repairs done and submit the invoices for reimbursement.  *Id.* at 563.  A dispute then arose over whether defendant was liable for repairs to the boat, and the plaintiff sued in Virginia state court.  *Id.* at 561.  The Supreme Court of Virginia found Virginia courts could exercise

14

personal jurisdiction over the defendant. *Id.* at 563. Subsequent courts have interpreted *Peninsula Cruise* as support for the proposition that part performance of a contract in a forum gives rise to personal jurisdiction, even if the contract was consummated elsewhere. *See Production Group*, 337 F. Supp. 2d at 795; *Prolinks, Inc. v. Horizon Organic Dairy, Inc.*, No. 193616, 2001 WL 1829993, at *2-3 (Va. Cir. Ct. July 9, 2001).

Here, Tegeler's part performance of the confidentiality agreement involved Virginia contacts.  First, part of Tegeler's job responsibilities included projects in Virginia.  Second, Tegeler's employment required regular contact with Virginia, including in-person visits to client locations and company headquarters in the Commonwealth.  Finally, a large portion of the confidential information is stored in Virginia. Tegeler states the alleged breach "had nothing to do with Virginia." (Def.'s Reply [Dkt. 11] at 3.)  While the confidentiality agreement was entered into in Virginia and supposedly breached elsewhere, this apparent inverse of the situation in *Peninsula Cruise* does not negate the fact that Tegeler reached into Virginia to enter into the contract in the first place. *See I.T. Sales,* 278 S.E.2d at 790 (finding personal jurisdiction proper where a contract was made in Virginia but substantially all of the performance under the contract took place outside of Virginia).

15

### 3. Constitutionally Reasonable

Finally, a court must consider whether the exercise of personal jurisdiction is constitutionally reasonable.  A court may consider additional factors to ensure the appropriateness of the forum.  Such factors include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Engineers*, 561 F.3d at 279.  Considering these factors here leads to the conclusion that personal jurisdiction in Virginia is constitutionally reasonable.  Tegeler is a Maryland resident, and though litigating elsewhere might be more convenient for him, it is not so unduly burdensome to litigate here that would warrant disturbing Plaintiff's choice of forum. If Plaintiff's allegations are true, then harm to the corporation will be felt significantly here in Virginia, where the corporation is incorporated and has its principal place of business.

After considering all three factors, this Court finds that Plaintiff has met its burden to show specific jurisdiction exists over Tegeler in Virginia.

### B. General Jurisdiction

General jurisdiction exists for claims entirely distinct from the defendant's in-state activities when a defendant's activities in the state have been "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n. 9 (1984). Plaintiff has not made a prima facie case that Tegeler is subject to general jurisdiction in Virginia. Though Tegeler owns real property in Virginia, it is an investment property which he rents to others. (Tegeler Decl. ¶ 6.) In the last few years, he has visited the house no more than once or twice a year. (*Id.*) Tegeler does not visit Virginia for leisure purposes and owns no additional real property in Virginia. (*Id.* ¶ 7.) Taken together, these facts do not rise to the level of continuous and systematic contacts required to support general jurisdiction. Accordingly, this Court cannot assert general jurisdiction over Tegeler.

### IV. Conclusion

For the reasons set forth above, the Court will deny Defendant's Motion to Dismiss. An appropriate order will follow.

|  |  |
|---|---|
|  | /s/ |
| September 24, 2014 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |